UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMPIRE HEALTH FOUNDATION, *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> XAVIER BECERRA, Secretary, U.S. Department of Health and Human Services, <br><br> **Defendant.** | Civil Action No. 20-2149 (JEB) |

## MEMORANDUM OPINION

In this Medicare-reimbursement case, Plaintiffs Empire Health Foundation and hospitals it owns seek payment for certain services the hospitals provided to Medicare patients over a decade ago. Following an administrative rollercoaster of reimbursement appeals and remands, Defendant Department of Health and Human Services dismissed the latest iteration of Plaintiffs' challenge to the agency's reimbursement formula. Unhappy with that decision, Plaintiffs brought this suit, asking the Court to find the agency's actions improper. After the completion of summary-judgment briefing, Defendant now proposes an alternative: remand this case to allow the agency to reevaluate Plaintiffs' reimbursement sums in light of a forthcoming rule addressing the question at the heart of their challenges. Although Plaintiffs oppose this outcome, the Court agrees with Defendant that this is the most efficient course; it will thus grant the Motion to Remand and return this case to the agency.

I.  **Background**

Empire Health Foundation and two hospitals it owns, Valley Hospital Medical Center and Deaconess Medical Center, seek reimbursement for services those hospitals provided to Medicare patients.  Plaintiffs' journey to obtain reimbursement has been long and winding, and the Court provides a truncated version here.  Interested readers may consult this Court's earlier Opinion in Empire Health Foundation v. Burwell (Empire I), 209 F. Supp. 3d 261 (D.D.C. 2016), for a more detailed account of the procedural history of this case and the Medicare reimbursement scheme it involves.

The gist of it is this:  The Centers for Medicare and Medicaid Services (CMS) administers reimbursements for providers who treat Medicare patients.  Id. at 263–64.  Private companies enlisted by CMS (known as "Medicare Administrative Contractors" or "MACs") calculate the amount of reimbursement each provider is due through a complex equation that is "roughly pegged to the number of patients discharged."  Id. at 264 (emphasis omitted).  They inform providers of their reimbursement sum in a document called a "Notice of Program Reimbursement" (NPR).  Id.  Some NPRs include certain adjustments to the baseline formula.  Relevant here, Valley and Deaconess received "'disproportionate share hospital' or 'DSH' adjustment[s]," which are "a bump-up for hospitals that 'serve[] a significantly disproportionate number of low-income patients.'"  Id. (quoting 42 U.S.C. § 1395ww(d)(5)(F)(i)(I)).  DSH adjustments are calculated by adding two fractions that determine the hospital's disproportionate patient percentage for a fiscal period.  See ECF No. 16-1 (Amended Complaint), ¶¶ 9–11.  One of those fractions — the Medicare/SSI fraction — is at issue here.  That fraction, which is calculated by CMS, is determined by dividing the time spent caring for patients entitled to benefits under both Medicare Part A and the Supplemental Security Income (SSI) program by

the time spent caring for patients who are entitled to benefits under only Medicare Part A. Id., ¶¶ 10, 15; see also Azar v. Allina Health Services (Allina II), 139 S. Ct. 1804, 1809 (2019); 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

Providers that are unhappy with their reimbursement sum may appeal their NPR to the Provider Reimbursement Review Board (PRRB), which is authorized to affirm or alter the award. See Am. Compl., ¶¶ 16–18 (citing 42 U.S.C. § 1395oo(a)). The PRRB's determination is subject to further review by the Secretary of Health and Human Services. Id., ¶ 18; see also Empire I, 209 F. Supp. 3d at 264. Once the Secretary has issued her decision or declined to review a decision of the PRRB, a provider has "the right to obtain judicial review." Empire I, 209 F. Supp. 3d at 264 (quoting 42 U.S.C. § 1395oo(f)(1)); see also 42 C.F.R. § 405.1877.

Dissatisfied with the NPRs they received for the 2006 and 2007 years, respectively, Valley Hospital and Deaconess Medical Center initiated this reimbursement-appeal process with the PRRB in 2009. See Am. Compl., ¶ 19. Those appeals challenged the agency's inclusion of time spent treating Medicare Part C enrollees (Part-C days) in the Medicare/SSI fraction, which the agency had done under the theory that Part-C patients are also entitled to benefits under Part A. Id. The PRRB remanded those appeals to the MACs, and Plaintiffs challenged that decision by filing suit in this Court. Id., ¶ 20. Finding that Plaintiffs' challenges were premature because the remand process had not yet been completed, this Court dismissed the case in September 2016. Empire I, 209 F. Supp. 3d at 263.

When Plaintiffs received revised NPRs in March 2017, they again appealed to the PRRB, this time also seeking expedited judicial review. See Am. Compl., ¶ 23. In their appeal, the providers again challenged the treatment of Part-C days in the Medicare/SSI fraction. See ECF No. 36 (Def. Reply) at 4. The PRRB held that it lacked jurisdiction to review the revised NPRs

because the revisions had not included an adjustment to the Medicare/SSI fraction, and regulations prohibit consideration of any matter that has not been specifically revised. See Am. Compl., ¶ 24; ECF No. 16-6 (PRRB Decision in 17-0555GC) at 8–9; 42 C.F.R. § 405.1889(b)(2). Plaintiffs filed another suit in this Court to vacate that decision and to order the PRRB to reinstate its appeal from the initial NPRs. See Empire Health Foundation v. Azar (Empire II), No. 19-1692. Not long thereafter, the parties filed a Joint Motion to Remand the case to the Secretary, and this Court granted the Motion and signed their Proposed Order in October 2019. See ECF No. 35-1 (Empire II Motion for Remand) at 7–8 (Empire II Remand Order); see also No. 19-1692, Minute Order of Oct. 22, 2019; Am. Compl., ¶¶ 25–28. The PRRB has since reopened the case and issued a request for information to which the providers and the MAC have responded. See ECF Nos. 35-2 (MAC Response); 35-3 (Providers' Response). No final decision has yet been rendered.

Plaintiffs' challenge to the inclusion of Part-C days in the Medicare/SSI fraction was not original. That same challenge appeared in a congeries of suits, and the Supreme Court confronted the issue in 2019. See Allina II, 139 S. Ct. at 1809–10. In Allina II, the Court held that CMS could not implement a policy of including Part-C days in the Medicare/SSI fraction without going through the notice-and-comment rulemaking process. Id. at 1817. It offered no view on the merits of whether Part-C days should be included in the fraction. The agency responded to this decision in two ways: first, CMS issued a proposed rule stating that Part-C days would be included in the Medicare/SSI fraction for fiscal years before 2013, and, second, CMS issued a ruling (CMS Ruling 1739-R) divesting the PRRB of jurisdiction over NPR appeals from before 2013 that raise the Part-C-days question until the issuance of the forthcoming final rule. See ECF No. 29 (Motion to Remand), ¶¶ 9–10; Medicare Program; Treatment of Medicare

Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage, 85 Fed. Reg. 47,723-01 (Aug. 6, 2020) (proposed rule); ECF No. 16-12 (CMS Ruling 1739-R). The Secretary also sought to consolidate ongoing lawsuits that raised the same issue, and 93 of them — including Deaconess's 2007 appeal of its initial NPR — were consolidated before Judge Amy Berman Jackson. See In re: Allina II, Misc. No. 19-190 (D.D.C.). Judge Jackson then remanded many of these lawsuits — namely, all those that specifically challenged the inclusion of the Part-C days as improper because of the agency's failure to undertake notice-and-comment rulemaking. Id., ECF No. 74 (Remand Order). Deaconess's 2007 initial-NPR appeal was among those remanded. Id., ECF No. 74-1 (Appendix of Remanded Cases) at 3, item 79.

In the midst of this, Plaintiffs asked CMS to realign their Medicare/SSI fractions to the hospitals' cost year (*i.e.*, calendar-year reporting periods), rather than the federal fiscal years to which they had previously been aligned. See Am. Compl., ¶ 30. CMS granted this request, and Plaintiffs received adjusted NPRs on December 7, 2018. Id. Like those before them, these realigned NPRs included Part-C days in the Medicare/SSI fraction. Id., ¶¶ 31–32. Plaintiffs thus appealed to the PRRB once more. Id., ¶¶ 32–33. Once more, the Board dismissed the appeal, finding that "it [did] not have jurisdiction over the DSH Part C Days issue from the revised NPRs" because "the specific issue[] was not adjusted as part of the revised NPRs." ECF No. 34-1 at ECF pp. 4–7 (PRRB Decision in Case No. 19-1983GC) at ECF p. 5. Although the realigned NPRs differed from those the providers had previously received, "CMS [did] not utilize a new or different data match process when it issue[d] a realigned SSI percentage – all of the underlying data remain[ed] the same, it is simply that a different time period [was] used." Id. at ECF pp. 4–5 (emphasis in original). The same regulations that prohibited review of the revised

5

Medicare/SSI fractions in PRRB appeal No. 17-0555GC thus barred review in this case, No. 19-1983GC. See 42 C.F.R. § 405.1889(b)(2).

Unhappy with the PRRB's dismissal of their appeal, Plaintiffs filed this action in August of 2020, see ECF No. 1 (Complaint), and their Amended Complaint that December. Plaintiffs allege four counts: 1) the PRRB's Decision in Case No. 19-1983GC violated this Court's remand Order in Empire II; 2) the PRRB has unreasonably delayed resolving Plaintiffs' appeals, in violation of 5 U.S.C. § 706(1); 3) the PRRB incorrectly held that it lacked jurisdiction over the appeal of Plaintiffs' realigned NPRs in Case No. 19-1983GC; and 4) CMS Ruling 1739-R is invalid. See Am. Compl., ¶¶ 37–54. Waiting for some reason until after both sides had completed dispositive briefing, Defendant filed a Motion for a voluntary remand of this case to the Secretary on November 19, 2021. See ECF No. 29 (Motion to Remand). Plaintiffs opposed, see ECF No. 35 (Pl. Opp.), asking the Court to retain the case and decide the summary-judgment dispute.

**II.      Legal Standard**

Courts have "broad discretion to grant or deny an agency's motion to remand." Utility Solid Waste Activities Group v. EPA, 901 F.3d 414, 436 (D.C. Cir. 2018); see also Code v. McHugh, 139 F. Supp. 3d 465, 468 (D.D.C. 2015) ("The decision whether to grant an agency's request to remand is left to the discretion of the court."). That said, courts will "generally grant an agency's motion . . . so long as 'the agency intends to take further action with respect to the original agency decision on review.'" Utility Solid Waste Activities Group, 901 F.3d at 436 (quoting Limnia, Inc. v. U.S. Department of Energy, 857 F.3d 379, 386 (D.C. Cir. 2017)). The rationale for this approach is clear: courts "prefer[] to allow agencies to cure their own mistakes rather than wast[e] the courts' and the parties' resources reviewing a record that both sides

6

acknowledge to be incorrect or incomplete." Ethyl Corp. v. Browner, 989 F.2d 522, 524 (D.C. Cir. 1993); accord FBME Bank Ltd. v Lew, 142 F. Supp. 3d 70, 73 (D.D.C. 2015).  For this reason, "[v]oluntary remand is typically appropriate (i) when new evidence becomes available after an agency's original decision was rendered, or (ii) where intervening events outside of the agency's control may affect the validity of an agency's actions." FBME Bank Ltd., 142 F. Supp. 3d at 73 (internal citations and quotation marks omitted).

These are not the only circumstances, however, in which a voluntary remand is warranted.  "Even in the absence of new evidence or an intervening event, . . . courts retain the discretion to remand an agency decision when an agency has raised 'substantial and legitimate' concerns in support of remand." Id. (quoting Carpenters Industrial Council v. Salazar, 734 F. Supp. 2d 126, 132 (D.D.C. 2010)).  Two factors constrain this discretion.  First, the Court will not grant an agency request that "appears to be frivolous or made in bad faith." Utility Solid Waste Activities Group, 901 F.3d at 436.  Second, courts should "consider whether remand would unduly prejudice the non-moving party." Id.; see also FBME Bank Ltd., 142 F. Supp. 3d at 73 (similar).

**III.    Analysis**

The Secretary moves for a voluntary remand to allow him to re-examine Plaintiffs' appeals in light of Allina II and its aftermath. See Mot. to Remand at 1.  All of Plaintiffs' challenges, HHS asserts, are aimed at obtaining an answer to whether Part-C days are properly included in the Medicare/SSI fraction, and so remand is the most efficient way forward. Id., ¶¶ 1, 13–14; see also Def. Repl. at 3–4.  Plaintiffs mount a litany of protests to such a remand and alternatively ask the Court to retain jurisdiction over this case should it decide a remand is appropriate. See Pl. Opp. at 1–25.

7

As a preliminary matter, the Court rejects Plaintiffs' contention that the standards applicable to modifying an order — rather than those applicable to a motion for remand — should govern this case. See Pl. Opp. at 1–5; ECF No. 37-1 (Pl. Surreply) at 4–7. Their argument is based on their belief that a remand here would "significant[ly] alter[]" the remand Order this Court approved in Empire II. See Pl. Opp. at 3. That belief is mistaken. The Order in Empire II remanded the Part-C claims that "were raised in Provider Reimbursement Review Board ('PRRB') group appeal number 17-0555GC." Case No. 19-1692, ECF No. 12-1 (Empire II Remand Order). As discussed earlier, that appeal involved Plaintiffs' revised NPRs that were aligned to federal fiscal years, not the NPRs that had been realigned to the hospitals' cost years. It also predated the PRRB decision on appeal here: appeal number 19-1983GC. Id., Minute Order of October 22, 2019 (granting Empire II motion to remand); PRRB Decision in Case No. 19-1983GC (June 10, 2020). The Empire II remand Order thus does not govern the appeal presently before the Court, and so a remand here would not modify it.

Under the standards that govern motions to remand, this Court has "broad discretion to grant or deny an agency's motion." Utility Solid Waste Activities Group, 901 F.3d at 436. The agency has explained that it seeks a remand in order to reconsider the Medicare/SSI fractions in light of the forthcoming rule regarding Part-C days — a path it believes will prevent it from making the same mistake that led to reversal in Allina II. See Def. Repl. at 3, 5–6. Even if the Allina II decision does not govern this case and require a remand, as Plaintiffs contend, see Pl. Opp. at 5–9, this seems a prudent path, since any decision of the PRRB on remand following a disposition of this case in Plaintiffs' favor would still be subject to review of the Secretary, who presumably would follow the methodology established in the forthcoming Rule. See Def. Repl. at 5–6.

The Court is persuaded, furthermore, that a remand will "preserve[] scarce judicial resources by allowing [the] agenc[y] 'to cure [its] own mistakes.'" Carpenters Industrial Council, 734 F. Supp. 2d at 132 (granting voluntary remand where change in law rendered previous agency decision suspect). Plaintiffs object that the Court cannot properly remand this case because the question of whether Part-C days are CORRECTLY included in the Medicare/SSI fraction is not before it. See Pl. Opp. at 12–15. While it is true that none of Plaintiffs' claims directly asks this Court to address the Part-C question, the claims all "redound[] to [an] administrative challenge[] that their DSH adjustments were too low because the Secretary wrongly interpreted the DSH statute by including Part C patient days in the Medicare/SSI fraction." Def. Repl. at 3–4. In other words, each of Plaintiffs' procedural challenges is merely an attempt to expedite a recalculation of their realigned NPRs that omits the Part-C days from the Medicare/SSI fraction. The agency's request to reevaluate the treatment of these Part-C days thus indicates an "intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge," Limnia, 857 F.3d at 387, even if the Part-C question was not directly raised before this Court. Defendants have, therefore, "raised 'substantial and legitimate' concerns in support of remand." Carpenters Industrial Council, 734 F. Supp. 2d at 132 (quoting Sierra Club v. Antwerp, 560 F. Supp. 2d 21, 23 (D.D.C. 2008)).

Remand is appropriate, then, unless "the agency's request appears to be frivolous or made in bad faith" or "remand would unduly prejudice the non-moving party." Utility Solid Waste Activities Group, 901 F.3d at 436 (citing FBME Bank Ltd., 142 F. Supp. 3d at 73, and SKF USA Inc. v. United States, 254 F.3d 1022, 1029 (Fed. Cir. 2001)). As to the first condition, the Court finds no evidence of bad faith or frivolity. To the extent that Plaintiffs accuse Defendant's remand Motion of being pretext for dismissing this case, see Pl. Opp. at 10–12, the

9

Court is not convinced. Contrary to their suggestion, HHS nowhere requests a dismissal, and this scenario bears little resemblance to the one in Limnia, where remand would have left the Plaintiffs with only the option of restarting their agency challenge from the beginning. See 857 F.3d at 387–88 (remand request was impermissible attempt to dismiss case where agency requested remand not to reconsider license application but to review any new application plaintiff submitted). Likewise, the Court has no reason to think this remand is frivolous, as the Secretary has stated his intention to "reconsider" the question at the heart of Plaintiffs' challenges. See Motion to Remand at 7.

    Nor would this remand cause Plaintiffs undue prejudice. See Utility Solid Waste Activities Group, 901 F.3d at 436. In fact, as Defendant points out, "Granting the Secretary a voluntary remand will merely put Plaintiffs in the materially same position as if the Court were to grant them summary judgment" since the relief to which they would be entitled if successful on each of their claims is a remand to the agency. See Def. Repl. at 1; Banner Heart Hospital v. Burwell, 201 F. Supp. 3d 131, 143 (D.D.C. 2016) (finding remand was only appropriate remedy after setting aside agency action). Plaintiffs may be correct that resolution will not come anytime soon, but they face a potentially lengthy administrative process whether their claims are returned to the agency now or at the end of litigation in this Court. See Clark v. Perdue, No. 19-394, 2019 WL 2476614, at * 3 (D.D.C. June 13, 2019) (finding remand proper where it was same relief to which plaintiff would have been entitled after merits resolution despite plaintiff's objection that remand would delay resolution). Faster resolution might be had if this Court were to conclude that Defendant was entitled to judgment on the merits, but that is surely not a preferable outcome for Plaintiffs.

They also argue that, in addition to delaying resolution of their claims, remand will prejudice them by creating "jurisdictional uncertainties as to whether and how Plaintiffs will be able to obtain administrative and judicial review of their claims after the remand is completed." Pl. Opp. at 18–19.  Defendants have clarified, however, that the agency's reopening regulations — which led to dismissal on jurisdictional grounds of the prior PRRB appeals — would not apply to these claims on remand.  See Def. Repl. at 8–10.  Rather, "[t]he DSH payment adjustments for Part C patient days that will be calculated under the forthcoming rule will be new determinations with statutory appeal rights," even if the NPRs are not changed.  Id. at 10 (citing 42 U.S.C. § 1395oo(a)(3), (f)).  The prejudice Plaintiffs fear, then, will not come to pass.

The Court therefore concludes that remand is appropriate.  See American Wild Horse Preservation Campaign v. Salazar, 115 F. Supp. 3d 1, 2 (D.D.C. 2012) ("[A]n agency's motion to remand for reconsideration of its own decision is usually granted.") (citation omitted).

\*       \*       \*

Before returning this appeal to the agency, the Court last addresses Plaintiffs' request that it retain jurisdiction and "'an active supervisory role' during the period of remand."  Pl. Opp. at 24–25 (citing Clark, 2019 WL 2476614, at \*4).  The Court "has the discretion to retain jurisdiction over a case pending completion of a remand," but exercise of that discretion is "typically reserved for cases alleging unreasonable delay of agency action or failure to comply with a statutory deadline, or for cases involving a history of agency noncompliance with court orders or resistance to the fulfillment of legal duties."  Baystate Medical Center v. Leavitt, 587 F. Supp. 2d 37, 41 (D.D.C. 2008) (citing Cobell v. Norton, 240 F.3d 1081, 1109 (D.C. Cir. 2001)).  Although this case does involve a claim of unreasonable delay, the Court does not find that it constitutes one of the rare cases in which deviation from the "norm [] to vacate agency action . . .

11

and remand for further proceedings consistent with the judicial decision, without retaining oversight over the remand proceedings" is warranted.  Id.  In particular, the Court notes that there is no evidence of noncompliance with court orders or attempts to avoid legal duties, and so the agency is entitled to the presumption that it will discharge its duties in good faith.  See CTIA-The Wireless Association v. FCC, 530 F.3d 984, 989 (D.C. Cir. 2008); see also Baystate Medical Center, 587 F. Supp. 2d at 41 n.5 ("The Court does not consider the years-long administrative litigation before the Provider Reimbursement Review Board and the CMS Administrator to indicate recalcitrance and resistance to fulfilling legal duties, but instead to reflect the kind of hard-fought litigation that regularly occurs in cases involving programmatic relief and multi-million dollar payments.").  This Court, accordingly, will not retain jurisdiction over this case on remand.

**IV.   Conclusion**

For the foregoing reasons, Defendant's Motion for Remand will be granted.  A separate Order so stating shall issue this day.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 8, 2022